Michael C. Zellers - SBN 146904
michael.zellers@tuckerellis.com
Amanda Villalobos - SBN 262176
amanda.villalobos@tuckerellis.com
Nicholas Janizeh - SBN 307816
nicholas.janizeh@tuckerellis.com
Caroline Toole - SBN 316072
caroline.toole@tuckerellis.com
TUCKER ELLIS LLP
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:   213.430.3400
Facsimile:    213.430.3409

Attorneys for Defendants JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC.

[Additional counsel listed in signature block]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ALIZA AMBRIZ, an individual,<br><br>                   Plaintiff,<br><br>          v.<br><br>JOHNSON & JOHNSON, et al.,<br><br>                   Defendants. | Case No.: 2:19-cv-03171<br><br>**DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S RESPONSE TO ORDER TO SHOW CAUSE WHY REMAINING CENTRAL DISTRICT TALC ACTIONS SHOULD NOT BE REMANDED** |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 4

ARGUMENT ...................................................................................... 5

I.    REMANDING THE OSC CASES WOULD BE FUTILE IN
      THIS CONTEXT ......................................................................... 5

II.   THE OSC CASES ARE DIFFERENT FROM OTHERS THIS
      COURT HAS REMANDED ......................................................... 8

III.  THE DELAWARE DISTRICT COURT IS EMPOWERED TO
      EFFICIENTLY CONSIDER STATE COURT TALC CLAIMS
      LIKE THOSE IN THE OSC CASES ........................................... 12

IV.   THERE IS A STRONG BASIS FOR "RELATED TO"
      JURISDICTION ....................................................................... 14

CONCLUSION ................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) ..................................................................... 6, 7, 10

*Abbatiello v. Monsanto Co.*,
2007 WL 747804 (S.D.N.Y. Mar. 8, 2007) ....................................................... 10

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. 2001) ............................................................................. 19

*Berry v. Pharmacia Corp.*,
316 B.R. 883 (S.D. Miss. 2004) ......................................................................... 10

*Calumet Nat'l Bank v. Levine*,
179 B.R. 117 (N.D. Ind. 1995) ............................................................................. 6

*In re Cedar Funding, Inc.*,
419 B.R. 807 (B.A.P. 9th Cir. 2009) ................................................................... 13

*In re Combustion Eng'g, Inc.*,
391 F.3d 190 (3d Cir. 2004) ......................................................................... 18, 19

*In re Dow Corning Corp.*,
86 F.3d 482 (6th Cir. 1996) .......................................................................... 10, 19

*In re Federal-Mogul Global, Inc.*,
282 B.R. 301 (D. Del. 2002) .................................................................. 17, 18, 19

*Hopkins v. Plant Insulation Co.*,
342 B.R. 703 (D. Del. 2006) ............................................................................... 6

*Hopkins v. Plant Insulation Co.*,
Case No. 06-cv-298-JJF (D. Del. May 22, 2006) ................................................ 7

*In re Lower Bucks Hosp.*,
488 B.R. 303 (E.D. Pa. 2013) ............................................................................ 17

*In re LTC Holdings, Inc.*,
587 B.R. 25 (Bankr. D. Del. 2018) ..................................................................... 18

*In re Millennium Lab Holdings II, LLC*,
    591 B.R. 559 (D. Del. 2018) ............................................................................ 17

*In re Montreal Me. & Atl. Ry., Ltd.*,
    2014 WL 1155419 (D. Me. Mar. 21, 2014) ........................................ 12, 13, 15

*In re N.E. Compounding Pharm., Inc. Prods. Liab. Litig.*,
    496 B.R. 256 (D. Mass. 2013) .................................................................... 10, 13

*In re Nutraquest, Inc.*,
    2004 U.S. Dist. LEXIS 29143 (D.N.J. Mar. 8, 2004) ...................................... 13

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d. Cir. 1984) .................................................................... 15, 18

*In re Pan Am. Corp.*,
    950 F.2d 839 (2d Cir. 1991) ............................................................................ 12

*Royal Indem. Co. v. Admiral Ins. Co.*,
    2007 WL 4171649 (D.N.J. Nov. 19, 2007) ...................................................... 17

*In re Twin Labs., Inc.*,
    300 B.R. 836 (S.D.N.Y. 2003) ........................................................................ 12

*Whittingham v. CLC of Laurel, LLC*,
    2006 WL 2423104 (S.D. Miss. Aug. 22, 2006) ............................................ 6, 11

*In re. W.R. Grace & Co.*,
    386 B.R. 17 (Bankr. D. Del. 2008) ................................................................ 9, 15

**Statutes**

28 U.S.C. § 157(b)(5) ....................................................................................*passim*

28 U.S.C. § 1452(b) .............................................................................................. 4

**Other Authorities**

Gina Kolata, *The Sad Legacy of the Dalkon Shield*, NY Times (Dec.
    6, 1987), online at https://www.nytimes.com/1987/12/06/
    magazine/the-sad-legacy-of-the-dalkon-shield.html ........................................ 10

iii

Johnson & Johnson and Johnson & Johnson Consumer Inc. (together, "J&J") hereby respond to the Court's *Order to Show Cause Why Remaining Central District Talc Actions Should Not Be Remanded*, Dkt. No. 10 (the "OSC"), which has been filed with respect to a number of Talc Claims[1] in this Court (together, the "OSC Cases").

## **INTRODUCTION**

The simplest reason this Court should not remand the OSC Cases is because there is no need. In Delaware, the District Court has set a schedule for the Venue Motion that closely mirrors the schedule set in this Court's OSC. Even a prompt ruling on the latter would likely precede a ruling on the former by days or weeks—yet could disrupt the OSC Cases, for example if this Court remands them to state court and the Delaware District Court then transfers them back into federal court, as it has the authority to do. Duplicating efforts in this manner would thus be unproductive at best, counterproductive at worst. The Delaware District Court has exclusive authority to ultimately fix venue for the OSC Cases (and other Talc Claims) under 28 U.S.C. § 157(b)(5), so this Court need not endeavor to rule before a decision on the Venue Motion. That is why other federal courts—including, so far, in the Southern District of New York, Eastern District of New York, and Northern District of Ohio—have stayed Talc Claims pending a ruling on the Venue Motion. "In the interest of conserving judicial resources and avoiding duplication of effort," OSC at p.2, J&J respectfully recommends that this Court do the same.

If this Court nonetheless decides to address remand of the OSC Cases, there are good reasons why they should not be remanded. First, unlike the two cases this

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in J&J's Venue Motion, Dkt. No. 1-5.

Court remanded in substantially similar opinions,[2] the majority of the OSC Cases have not been substantially litigated and do not have imminent trial dates. Indeed, the majority of these cases remain in the very early stages and have no trial date. This is particularly important because such cases illustrate how transfer and centralized adjudication under § 157(b)(5) would benefit not just the courts, but also the parties—including the plaintiffs not yet scheduled for trial who face a poor medical prognosis. While plaintiffs' counsel have generally focused their remand papers on the *in extremis* cases that are near trial, many plaintiffs who are also *in extremis* but *not* near trial would stand to benefit from an efficient proceeding in Delaware District Court. What's more, transfer under § 157(b)(5) is still appropriate when there are *in extremis* cases among the relevant actions, as reflected in the fact that many courts have applied this provision to transfer cases similarly alleging serious, even terminal, health conditions allegedly resulting from defective products. Further still, the Delaware District Court will have mechanisms at its disposal to ensure that *in extremis* cases are fairly treated.

Second, although the OSC Cases involve questions of state tort law and are part of coordinated proceedings in California, neither of these facts warrants remand. Section 157(b)(5) specifically contemplates transfer of state-law claims by targeting "personal injury tort and wrongful death claims"—which are almost always governed by state law. Nor do the OSC Cases raise particularly unusual or unsettled questions of state law. As to their coordinated status, this yields a benefit for litigations in California but does not speak to the thousands of additional Talc Claims scattered throughout the country. The parties cannot avail themselves of

---

[2] Dkt. No. 29, Order Granting Plaintiffs' *Ex Parte* Application for Remand, *Cabibi v. Avon Prods., Inc.*, Case No. 2:19-cv-03037-CJC-JC (C.D. Cal. May 3, 2019) ("Cabibi Order"); Dkt. No. 22, Order Granting Plaintiffs' *Ex Parte* Application for Remand, *Weirick v. Brenntag N. Am., Inc.*, Case No. 2:19-cv-03036-CJC-JC (C.D. Cal. May 3, 2019) ("Weirick Order").

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

any mechanism to aggregate all the Talc Claims in a single forum in California. But they can do so in Delaware District Court. Section 157(b)(5) transfer and centralization does not threaten plaintiffs' jury trial right, offers substantial efficiencies, avoids the potential for inconsistent rulings, and stands to benefit the creditors of Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (together, the "Debtors" or "Imerys"), including plaintiffs—all of which are important equitable considerations in any remand analysis this Court decides to undertake.

Finally, for a number of reasons, there is a strong legal and factual basis for "related to" jurisdiction over the OSC Cases (and other Talc Claims). All of the OSC Cases name Imerys as a codefendant. In fact, the Talc Claims (including the OSC Cases) allege injuries that are fundamentally linked to the talc provided by Imerys, and only Imerys. That is the reason the OSC Cases (and 90 percent of the Talc Claims pending against J&J) named Imerys in the first instance.

The express contractual indemnification provisions between J&J and Imerys further support "related to" jurisdiction. These provisions were automatically triggered by the filing of the Talc Claims, and they cover litigation defense costs—which are *not* contingent on the outcome of any proceeding and do *not* necessitate intervening fact-finding. Every dollar that J&J spends now defending itself against the OSC Cases and other Talc Claims diminishes the Debtors' estates, which demonstrates the direct relationship between the matters. Courts have ruled that precisely these sorts of indemnification provisions support "related to" jurisdiction. Beyond that, two additional (and independent) factors support "related to" jurisdiction here: shared insurance policies between J&J and Imerys, and a complete "identity of interest" in just two talcum powder products sold by J&J and supplied by Imerys. Ultimately, the basis for "related to" jurisdiction here is anything but tenuous.

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

For all these reasons, the OSC Cases should not be remanded.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the interest of economy, J&J respectfully refers the Court to the Statement of Facts and Procedural History Section in its remand opposition briefs filed with this Court, for initial factual and procedural background. *See* Dkt. No. 20, Memorandum in Opposition to *Ex Parte* Application to Remand, *Cabibi v. Avon Prods., Inc.*, Case No. 2:19-cv-03037-CJC-JC (C.D. Cal. Apr. 26, 2019) ("Cabibi Opposition"); Dkt. No. 13, Memorandum in Opposition to *Ex Parte* Application to Remand, *Weirick v. Brenntag N. Am., Inc.*, Case No. 2:19-cv-03036-CJC-JC (C.D. Cal. Apr. 24, 2019) ("Weirick Opposition").

On May 3, 2019, after briefing on plaintiffs' motions for remand, this Court entered substantially similar orders remanding the *Cabibi* and *Weirick* cases. The Cabibi and Weirick Orders described those cases as involving plaintiffs who had an "imminent trial date" and "rapidly declining" health. Cabibi Order at p.3; Weirick Order at p.3. It also noted that these two cases had been "substantially litigated" in a California state-court coordinated proceeding. *Id.* at p.2. Applying 28 U.S.C. § 1452(b)'s equitable remand standard, *id.* at pp.4-5, the Court reasoned that remand was appropriate in these two cases for several reasons. First, it found they were "state law action[s] at [their] core" and had been substantially litigated in the coordinated proceeding. *Id.* at p.6. Second, it found that the *in extremis* nature of those plaintiffs' circumstances, coupled with their imminent trial date, counseled in favor of remand. *Id.* at pp.6-7. Finally, it reasoned that the basis for "related to" jurisdiction "appears tenuous" because Imerys is not a named party to those actions, and because it is connected "solely" by contractual indemnification and insurance-sharing agreements with J&J. *Id.* at p.5. The Court also suggested that J&J and Imerys would likely not suffer prejudice from remand. *Id.* at p. 6.

On May 6, 2019, the Court entered the OSC with respect to various State Court Talc Claims pending before it. The OSC sets briefing to complete on May 20, 2019, with a ruling anticipated by June 3, 2019.

On April 30, 2019 J&J filed in the District of Delaware an Emergency Motion for Provisional Transfer. *See In re Imerys Talc Am., Inc.*, Case No. 1:19-mc-00103-MN, Dkt. Nos. 12-16. The Delaware District Court denied that motion on May 9, 2019, finding emergency transfer unnecessary in advance of a decision on the merits of the Venue Motion, which will be fully briefed as of May 23, 2019. *See id.* Dkt. Nos. 34-35. The Delaware District Court noted its ability to effectuate transfer of any remanded cases under § 157(b)(5) as a ground for denying emergency relief. *See id.* Dkt. No. 34 at p.6.

## ARGUMENT

## I. Remanding the OSC Cases Would Be Futile in This Context

As the Court recognized in its OSC, there is an interest in "conserving judicial resources and avoiding duplication of efforts."  OSC at p.2  For both practical and legal reasons, that interest dictates against remand here. A remand ruling here would likely precede the Delaware District Court's ruling on the Venue Motion by mere days or weeks—thus creating an unnecessary duplication of efforts. These considerations are only amplified by the governing law, which: (i) vests the Delaware District Court with exclusive authority to fix venue; and (ii) empowers that court to transfer cases even where they have already been remanded to state court.

In the OSC, this Court set briefing on remand to conclude by May 20, 2019. *Id.* at p.2. The Venue Motion briefing is set to conclude by May 23, 2019, just three days later.[3] Even if the Court were so inclined, remanding the OSC Cases in

---

[3] *See* Decl. Ex. A (*In re Imerys Talc Am., Inc.*, Case No. 19-mc-00103-MN, Dkt. No. 11 (D. Del. Apr. 29, 201)) (so-ordered by text order Apr. 30, 2019).

this context would bring little or no benefit—the OSC Cases would likely be back in state court for a matter of days or weeks before the Delaware District Court ruled on the Venue Motion. Indeed, remanding the OSC Cases for a brief spell, despite the looming prospect of transfer *back* into federal court, would only breed uncertainty. These practical considerations speak to the important interest in "conserving judicial resources and avoiding duplication of efforts."  OSC at p.2.

The relevant law also supports this Court conserving judicial resources by not considering remand while the Venue Motion is pending before the Delaware District Court. That is because the Delaware District Court has exclusive authority to ultimately fix venue for the OSC cases. *See* 28 U.S.C. § 157(b)(5) ("[P]ersonal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, *as determined by the district court in which the bankruptcy case is pending*." (emphasis added)); *see also Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 708 (D. Del. 2006) (recognizing, under § 157(b)(5), court's "sole authority to determine the appropriate venue for [actions alleging] personal injury tort and wrongful death claims against, among others, [non-debtors over which the court has 'related to' jurisdiction]"); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986).[4] Should the Delaware District Court grant the Venue Motion, venue for these actions will be fixed in Delaware and they will be transferred there, mooting any

---

[4] *See also, e.g.*, *Whittingham v. CLC of Laurel, LLC*, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("Plaintiff has filed a Motion for Remand and Request for this Court to abstain. This issue needs to be considered as a part of the big picture. The District Court in Georgia [with jurisdiction over the bankruptcy] should consider this issue."); *Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 123 (N.D. Ind. 1995) (staying all proceedings while debtor-defendant pursued section 157(b)(5) motion and deferring ruling on motions because "whichever court ultimately takes the case should be the one that rules on the remaining argument").

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

remand issues. This Court need not endeavor to rule before the Delaware District Court.[5]

Recognizing the issues with ruling on remand in this context, several courts have stayed removed State Court Talc Claims pending a decision by the Delaware District Court. Chief Judge Colleen McMahon ordered a stay of all current and future State Court Talc Claims removed to the Southern District of New York. *See* Dkt. No. 8., Order, *In re Various Removed State Court Actions Against, Inter Alia, Johnson & Johnson ("State Court Talc Actions")*, No. 1:19-cv-03530-JGK (S.D.N.Y. April 30, 2019) (finding it "in the interest of justice for this court to await rulings from the District of Delaware and/or from the Multi-District Panel prior to undertaking any substantive work in connection with any of these removed State Court Talc Actions"). With reference to Judge McMahon's order, on May 3, 2019, Magistrate Judge A. Kathleen Tomlinson issued a stay of six months in a removed talc action pending in the Eastern District of New York. *See* Decl. Ex. C (*Mustapick v. A. W. Chesterton, Inc.*, Case No. 2:19-cv-02305-JMA-AKT (E.D.N.Y. May 3, 2019)) (text order on docket). And on May 6, 2019, Judge Dan Aaron Polster of the Northern District of Ohio ordered stays of two talc actions before him, pending the Delaware District Court's ruling on the Venue Motion. *See id.*, Ex. D (*Berry v. Clark Indus. Insulation Co.*, Case No. 1:19-cv-00890-DAP

---

[5] That is particularly so because the Delaware District Court is empowered by § 157(b)(5) to transfer cases that have *already* been remanded. *See* Decl. Ex. B (*Hopkins v. Plant Insulation Co.*, Case No. 06-cv-298-JJF (D. Del. May 22, 2006)), Mem. Order 3 (noting that "the Court may consider the transfer of this case under Section 157(b) regardless of the decisions reached by the California court on the transfer and remand issues"); *A.H. Robins*, 788 F.2d at 998 (affirming district judge's order transferring claims, *wherever pending*, to a single forum); *see also In re Imerys Talc Am., Inc.*, Case No. 1:19-mc-00103-MN, Dkt. No. 34 at p.6. Thus, even assuming this Court rules first and decides to remand the OSC Cases, such remand can be undone by the Delaware District Court—rendering it unnecessary in the first place.

(N.D. Ohio May 6, 2019)) (text order on docket); *id.* Ex. E (*Reardon v. Colgate-Palmolive Co.*, Case No. 1:19-cv-00892-DAP (N.D. Ohio May 6, 2019)) (text order on docket).

Respectfully, the best course is for this Court to defer consideration of whether to remand the OSC Cases until the Delaware District Court resolves the pending Venue Motion. That motion—which is proceeding on a parallel schedule to the OSC—has the potential to completely moot the remand issue here. In the interests of comity, efficiency, and achieving uniform outcomes by coordinated judicial proceedings, this Court should await the Delaware District Court's forthcoming decision.

## II.   The OSC Cases Are Different from Others this Court Has Remanded

If the Court nonetheless addresses remand of the OSC Cases, J&J submits that remand is not appropriate for the reasons set forth herein, as well as in the remand opposition briefs J&J previously submitted to the Court.[6] At the outset, the cases covered by the OSC are meaningfully different from *Cabibi* and *Weirick*, in ways that affect the equitable considerations the Court relied on when remanding those cases. The Court reasoned that *Cabibi* and *Weirick* had been "substantially litigated" and had "imminent trial date[s]," which weighed in favor of equitable remand. Cabibi Order at pp.2-3, 5-6; Weirick Order at pp.2-3, 5-6. The same cannot be said for the majority of the OSC Cases. Indeed, the majority of the OSC Cases are still in the very early stages and do not have trial dates set.[7] The earliest

---

[6] In the interest of economy, J&J will not repeat all the arguments against remand stated in those oppositions briefs, which it incorporates by reference. *See* Cabibi Opposition; Weirick Opposition. Instead, J&J will attempt to address the Court's concerns as reflected in the Cabibi and Weirick Orders.

[7] While two of the OSC Cases have a trial date in June (one of which is subject to a pending stipulated order to continue trial until October), as discussed in Argument Section I above, this Court endeavoring to rule before the Delaware

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

trial date in the minority of OSC Cases that have a date set is nearly a month away. Thus, the equitable considerations related to case status, which the Court found persuasive in *Cabibi* and *Weirick*, largely do not apply here.

This Court's remand orders also emphasized the imminent trial date because of those plaintiffs' *in extremis* condition, which the Court suggested could brook no delay. Cabibi Order at p.6; Weirick Order at p.6. As discussed above, the majority of the OSC Cases do not have imminent trial dates.[8] For these and many other plaintiffs around the country who have a poor medical prognosis yet do not have imminent trial dates, transfer to the Delaware District Court should not be viewed as presenting a "risk[ of] depriving [them] of [their] day in court," *id.*, but rather as a way to efficiently, centrally, and fairly fulfill that right. For example, the Delaware District Court could hold a single general causation hearing related to all State Court Talc Claims, and/or set bellwether trials representative of all such claims. Thus, considering both the differing circumstances in the OSC Cases and equitable treatment for all claimants/creditors in the Imerys estates—because the OSC cases do not exist in a vacuum—§ 157(b)(5) transfer will not unduly prejudice plaintiffs.[9] *Cf. In re W.R. Grace & Co.*, 386 B.R. 17 (Bankr. D. Del. 2008) (expanding a preliminary injunction to bar prosecution of pending asbestos

---

District Court would likely result in a minor difference given the parallel schedules. If anything, a remand to state court followed in short order by a potential transfer to Delaware District Court would only cause more uncertainty and disruption of these cases' schedules.

[8] For specific plaintiffs who allege that their *in extremis* condition puts them at risk of missing imminent trials if their claims are transferred, J&J offers *de bene esse* depositions, and also anticipates that the Delaware District Court would consider setting such cases for expeditious jury trials.

[9] Nor does transfer pose a risk to plaintiffs' jury trial right, because the Delaware District Court can hold jury trials. *See* 28 U.S.C. § 157(b)(5) (providing for venue-fixing where "claims shall be *tried*" (emphasis added)).

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

actions against non-debtor railroad over whom the court found "related to" jurisdiction, and finding the resulting hardship to asbestos plaintiffs was outweighed by "[t]he diversion of time, effort and resources that would be required if the [actions] proceed").

Certain plaintiffs' alleged *in extremis* condition does not bar § 157(b)(5) transfer. Rather, recognizing other paramount considerations, several courts have declined to remand and/or have transferred claims involving allegations of serious (and potentially terminal) medical conditions. *See generally, e.g.*, *A.H. Robins Co.*, 788 F.2d 994 (affirming transfer and centralization under § 157(b)(5) of thousands of claims alleging that the Dalkon Shield intrauterine device led to serious medical complications and death);[10] *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996) (reversing district court's determination of no "related to" jurisdiction over thousands of claims alleging that implants caused autoimmune disease); *In re N.E. Compounding Pharm., Inc. Prods. Liab. Litig.*, 496 B.R. 256 (D. Mass. 2013) (transferring claims under § 157(b)(5) where plaintiffs alleged health product in question "led to serious fungal infections and … death"); *Abbatiello v. Monsanto Co.*, 2007 WL 747804 (S.D.N.Y. Mar. 8, 2007) (declining to equitably abstain and remand plaintiffs' claims alleging defendants produced chemicals causing "cancer, liver disease, and other serious illnesses" where debtor and non-debtor defendants were "inextricably intertwined" and remand would harm administration of debtor's estate); *Berry v. Pharmacia Corp.*, 316 B.R. 883 (S.D. Miss. 2004) (declining to remand cases removed pursuant to "related to" jurisdiction where plaintiffs alleged serious injuries and deaths resulting from exposure to defendant's chemicals).

---

10 *See* Gina Kolata, *The Sad Legacy of the Dalkon Shield*, NY Times (Dec. 6, 1987), online at https://www.nytimes.com/1987/12/06/magazine/the-sad-legacy-of-the-dalkon-shield.html (Dalkon Shield cases alleged "serious pelvic infections leading to infertility or even death").

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

This legal principle is borne out by the experience with the talc claims. If certain plaintiffs' *in extremis* condition necessarily warranted remand as opposed to transfer and aggregation, then there could be no multidistrict litigation of like claims for that reason. But there is. The Judicial Panel of Multidistrict Litigation transferred and aggregated the *majority* of the talc claims against J&J. *See* Case No. 3:16-md-02738 (D.N.J.). By establishing the MDL, the Panel has effectively rejected, on behalf of the federal courts, the notion that certain plaintiffs' *in extremis* condition requires thousands of cases to be decided separately, and potentially inconsistently.[11] If this Court considers remand, it should likewise choose the benefits and efficiencies of adjudication in the Delaware District Court, notwithstanding the *in extremis* condition of some plaintiffs—particularly since most of the OSC Cases do not have imminent trials in the first place.

Of course, with numerous actions progressing non-uniformly across the country, there is no perfect time to aggregate without implicating some actions' schedules. There are practicable ways the Delaware District Court could mitigate any such limited disruption. This Court has remanded two cases that it determined would be particularly impacted by delay, however short. *See generally* Cabibi and Weirick Orders. But there are *thousands* of Talc Claims that would achieve significant efficiencies—for the courts and all creditors, including plaintiffs here—if aggregated under § 157(b)(5).[12]

---

[11] J&J has not acted inconsistently by seeking aggregation of the Talc Claims under § 157(b)(5), without including the talc cases in the MDL. The MDL has already achieved the efficiencies that the Venue Motion seeks with respect to non-MDL claims. There is no comparison between the MDL (which has consolidated actions for centralized, efficient adjudication) and the Talc Claims addressed in the Venue Motion (thousands of which are scattered throughout the country, in state and federal courts, in differing procedural postures).

[12] *Whittingham*, 2006 WL 2423104, at *1 (finding that venue-fixing court should consider issues raised in plaintiff's remand motion "as a part of the big picture").

### III.   The Delaware District Court Is Empowered to Efficiently Consider State Court Talc Claims Like Those in the OSC Cases

This Court also expressed concern that the two cases it remanded were "state law action[s] at [their] core," and were "part of a coordinated proceeding" in California state court. Cabibi Order at pp.2, 5; Weirick Order at pp.2, 5. Neither of these concerns warrants remand of the OSC Cases. As to the former, while it is undisputed that the claims involve questions of state tort law, this is not an obstacle to § 157(b)(5) transfer. Section 157(b)(5) specifically contemplates the transfer of state-law claims. *See* 28 U.S.C. § 157(b)(5) (identifying "personal injury tort and wrongful death claims" as the ones to be "tried in the district court in which the bankruptcy case is pending," *i.e.*, the Delaware District Court here). By enacting this language, Congress "singled out" personal injury and wrongful death claims—which are "almost always governed by state law"—as "the very ones it wanted transferred." *In re Twin Labs., Inc.*, 300 B.R. 836, 841 (S.D.N.Y. 2003); *see also id.* (noting the "strong legislative presumption favoring transfer under § 157(b)(5)" and finding that, in this context, it is not appropriate to give decisive effect to the factor of whether state-law issues predominate); *In re Montreal Me. & Atl. Ry., Ltd.*, 2014 WL 1155419, at *12 n.20 (D. Me. Mar. 21, 2014) (similarly declining to apply this factor). Nor are the state-law claims in the OSC Cases particularly unusual or unsettled. *See In re Pan Am. Corp.*, 950 F.2d 839, 846 (2d Cir. 1991) (remand based on predominance of state-law questions only warranted where there is "a particularly unusual question" or "unsettled issues" of state law). The OSC Cases concern straightforward tort claims governed by established law. None presents questions that are "difficult, unsettled, or unfamiliar to a federal court." *In re Twin Labs.*, 300 B.R. at 841. For these reasons, the state-law character of the OSC Cases does not weigh against § 157(b)(5) transfer or in favor of remand.

As to the concern that the OSC Cases are already part of California state-court coordinated proceedings, J&J agrees this would carry great weight *if the Talc Claims were all pending in California*. However, just a fraction of the approximately 2,400 Talc Claims are pending in California, and only 42 are subject to the OSC. In short, these litigations are pending in jurisdictions across the country, both state and federal. Plaintiffs cannot dispute that there is no California state-court mechanism that would permit aggregation of the Talc Claims in a single forum in California, in order to avoid inefficiencies and inconsistent treatment of Debtors' creditors and disparate impacts on Debtors' estates. There *is* such a mechanism to aggregate the claims in Delaware District Court. And while J&J certainly appreciates the efficiencies achieved within California through the use of coordinated proceedings, significant additional efficiencies would be gained through aggregation of the numerous nationwide Talc Claims in the Delaware District Court. Such efficiencies constitute a key equitable factor to consider here. *See, e.g.*, *In re Cedar Funding, Inc.*, 419 B.R. 807, 820 n.18 (B.A.P. 9th Cir. 2009) (listing first remand factor as "the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention"); *Montreal Me. & Atl. Ry., Ltd.*, 2014 WL 1155419, at *12 ("[J]udicial economy and efficiency concerns … though insufficient to *create* bankruptcy-relatedness jurisdiction, do weigh in the determination to retain jurisdiction." (emphasis added)); *N.E. Compounding Pharm.*, 496 B.R. at 273 (finding abstention would be "counterproductive" to judicial efficiency); *In re Nutraquest, Inc.*, 2004 U.S. Dist. LEXIS 29143, at *45 (D.N.J. Mar. 8, 2004) (finding abstention improper because it "would not facilitate the efficient administration of the estate").[13] In sum,

---

[13] The Court did not explicitly balance this remand factor in the Cabibi and

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

neither the state-law issues in the OSC Cases nor the existence of California coordinated proceedings requires remand.  Because the Delaware District Court's venue ruling will very soon determine the appropriate forum, this Court should defer deciding remand.

## IV.    There Is a Strong Basis for "Related To" Jurisdiction

As discussed in Argument Section I, the Delaware District Court has exclusive authority to decide whether to ultimately fix venue under § 157(b)(5), based on the asserted "related to" jurisdiction over the Talc Claims. Being charged with the decision on venue, the Delaware District Court is the natural fit for considering whether "related to" jurisdiction exists. This Court should allow such issues to be resolved by the Delaware District Court.

Assuming the Court reaches this issue, however, there is a strong legal and factual basis for "related to" jurisdiction over the Talc Claims. In its remand orders, the Court reasoned that this jurisdictional claim is "tenuous," because "Imerys is not a party to Plaintiffs' action," and its connection "rests solely on its contractual indemnification and insurance-sharing agreements with [J&J]." Cabibi Order at p.5; Weirick Order at p.5. The Court went on to state that, "If [J&J] is entitled to contribution or indemnity from Imerys, it can assert a claim against Imerys's estates in the Delaware Bankruptcy Court." *Id.* at p.6. Respectfully, J&J submits that the Court's analysis here would benefit from consideration of additional important points, described below.[14]

---

Weirick Orders, though it cited and considered other factors listed in *Cedar Funding*. Cabibi Order at pp.4-5, Weirick Order at pp.4-5. J&J respectfully submits that this factor should be duly considered here.

[14] In the interest of economy, J&J respectfully refers the Court to the Statement of Facts and Argument Section II of its Venue Motion for necessary background and preliminary argument on federal courts' jurisdiction over this action.

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

*First*, Imerys is a named party to all of the OSC Cases—unlike in *Cabibi* and *Weirick*. That consideration, which the Court noted in the Cabibi and Weirick Remand Orders, therefore does not apply here.[15] And the facts here fully support "related to" jurisdiction, because the allegations against J&J are intrinsically related to the Debtors' estate. The Court said it well in the OSC: the Talc Claims allege "injury and wrongful death *caused by the talc* used in [J&J's] products," and Imerys is J&J's sole talc supplier. OSC at pp.1-2 (emphasis added). That is doubtless why all of the OSC Cases (and 90 percent of the State Court Talc Claims pending against J&J) named Imerys, contributing to its bankruptcy filing. Plaintiffs can draw a line directly between the two J&J products at issue and Debtors' talc; any liability of J&J derives from, and is intertwined with, talc supplied by Debtors and therefore Debtors' own liability.[16] In fact, plaintiffs in the OSC Cases have specifically alleged that the talc Imerys supplied to J&J was contaminated. *See, e.g.*, Decl. Ex. F (*Johnson & Johnson Talcum Powder Cases*, JCCP No. 4872, JCCP Plaintiffs' Second Amended Master Complaint (Jan. 15, 2019), at ¶¶ 150-52,

---

[15] Even if Imerys were not named in the OSC Cases (or if it were dismissed or severed), courts have exercised jurisdiction over actions against third parties that do not name the debtors. *See, e.g.*, *Montreal Me. & Atl. Ry., Ltd.*, 2014 WL 1155419, at *1, *12 (granting § 157(b)(5) transfer though claims against debtors had been dismissed, and in actions where debtors had not been named); *W.R. Grace & Co.*, 386 B.R. at 23-30 & n.33 (exercising "related to" jurisdiction over 100+ asbestos-related personal injury suits against non-debtor railroad, most of which did not name any debtors). A proceeding "need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984).

[16] Nor do any plaintiffs in the State Court Talc Claims attempt to argue that J&J "added" asbestos to the talc it received from Debtors, creating some supervening, separate liability. Plaintiffs' case theory is therefore integrally related to the action or inaction of Debtors in supplying allegedly contaminated talc.

213, 228 (master complaint for 26 of the OSC Cases, alleging that defendants knew of asbestos contamination in talc supply); *Id.*, Ex. G (*LAOSD Asbestos Cases*, JCCP Case No. 4674, Plaintiffs' Responses to Special Interrogatories (July 13, 2018)), at 2 (alleging that Debtors engaged in "supply of asbestos-contaminated talc" to J&J from 1967 through 2003). If Debtors had supplied contaminated talc, as alleged, it would also violate J&J's contractual supply specifications, which establishes that Debtors are real parties in interest to the Talc Claims. *See, e.g.*, *id.*, Ex. H (1989 Agreement) § 6(b), Exhibit E § 1, Exhibit E-5 § 2; *id.*, Ex. I (2001 Agreement) § 2.2.[17] Under these facts and applicable law, "related to" jurisdiction exists.

*Second*, the type of contractual indemnification provisions here do not suggest that "related to" jurisdiction is "tenuous." Rather, the indemnification provisions are exactly the kind that courts have found give rise to "related to" jurisdiction. That is because the provisions here were automatically triggered by filing of the Talc Claims—without regard to those claims' ultimate resolution—and are not contingent on any subsequent proceeding. In particular, the supply agreements state that Debtors are to "indemnify, *defend* and hold harmless [J&J] … *from and against* all liabilities arising out of *any* violation by [Debtors] of *any* law, ordinance, regulation or rule."[18] *See id.*, Ex. H (1989 Agreement) § 10; *id.*,

---

[17] Before 1989, Windsor Minerals, Inc. (now known as Debtor Imerys Talc Vermont) supplied cosmetic talc to J&J. *See id.*, Ex. J (Imerys First Day Decl.) ¶ 12. Pre-1989 liabilities for failure to conform to the specifications "then in effect," where "such variance from such specifications was a material contributing factor in the claim, suit, demand or cause of action being asserted," remain with Debtor ITV. *Id.*, Ex. H (1989 Agreement) § 10.

[18] There can be no doubt that plaintiffs in the OSC Cases are alleging violations of "any law, ordinance, regulation or rule." *See, e.g.*, *id.*, Ex. F (*Johnson & Johnson Talcum Powder Cases*, JCCP No. 4872, JCCP Plaintiffs' Second Amended Master Complaint), at ¶¶ 32-49, 149, 260-61 (master complaint for 26 of the OSC Cases, alleging violations of California Proposition 65 and 21 C.F.R. § 740.1(a)); *id.*, Ex.

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

Ex. I (2001 Agreement) § 7(a)(iv) (emphasis added). Under the plain terms of these provisions, Debtors are required to defend J&J against plaintiffs' *allegations*—meaning the duty to defend is not contingent on any fact-finding. No matter the ultimate verdict, each dollar J&J spends defending itself against the OSC Cases and other Talc Claims decreases the portion of the Debtors' estates available to satisfy other creditors.

Courts faced with express, contractual indemnification provisions that are triggered without any subsequent proceeding, as here, have found "related to" jurisdiction. *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 583 (D. Del. 2018) (finding "related to" jurisdiction on the basis of "contractual obligations to advance defense costs to the indemnified released parties before any final determination on the merits and without regard to the substance of the underlying putative claims against them"); *In re Lower Bucks Hosp.*, 488 B.R. 303, 316 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir. 2014) (finding "related to" jurisdiction over class action against non-debtor on basis of contractual indemnification language imposing an obligation on debtor "to assume the defense and the expense of defending against [the] claims, even though [the non-debtor's] liability has not yet been established" because such an "indemnification obligation, at least in part, was triggered upon the filing of the class action against [non-debtor]; and, it is not contingent upon a finding of liability"); *Royal Indem. Co. v. Admiral Ins. Co.*, 2007 WL 4171649, at *5 (D.N.J. Nov. 19, 2007) (claim for indemnification was "ripe" and thus supported "related to" jurisdiction where express language of agreement contemplated a duty to "indemnify and hold harmless . . . against any loss related to such claims"). Similarly, in *In re Federal-*

K (*LAOSD Asbestos Cases*, JCCP Case No. 4674, *Fong* Second Amended Complaint), at pp.16-17 (alleging violations, *inter alia*, of California Civil Code sections 1708 and 1710). Also, as discussed above, J&J's supply agreements with Debtors specified that the talc shall not contain asbestos.

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

*Mogul Global, Inc.*, 282 B.R. 301 (D. Del. 2002), the court recognized that absolute indemnification rights with respect to a non-debtor "*plainly established* a sufficient nexus" for "related to" jurisdiction.  *Id.* at 309 (emphasis added). So too here.[19]

    *Third*—and as another basis for "related to" jurisdiction—J&J and Imerys have shared insurance that threatens to deplete the pool of assets in the estates available for creditors. Like the indemnification provisions, this insurance covers defense costs, which immediately began to accrue.[20] *Id.*, Ex. L (Aetna Products Liability Insurance Policy) § 1 (providing right and duty to defend against suits, even if allegations are groundless, false, or fraudulent). If it is ultimately determined that Debtors are entitled to some of the insurance proceeds, but those proceeds have already been exhausted by J&J, the distributions available to

---

[19] The Court may have concluded the indemnification provisions here provide only a "tenuous" connection based on cases dealing with *common law*, non-contractual indemnification claims, which *are* contingent on a subsequent proceeding and have not ripened. *See, e.g.*, *Pacor*, 743 F.2d at 995 (finding no "related to" jurisdiction on the basis of non-contractual indemnification claims that did not give rise to any automatic liability and would require a subsequent proceeding); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 231-32 (3d Cir. 2004) (noting a lack of "express indemnification obligations," unlike here). Such cases did not confront the type of express, contractual, and vested indemnification provisions raised here.

Nor do the indemnification provisions here become "tenuous" by virtue of possible defenses thereto.  *See In re LTC Holdings, Inc.*, 587 B.R. 25, 38-39 (Bankr. D. Del. 2018) ("Any possible defenses by the Debtors against [non-debtor's indemnification] claim are not enough to derail jurisdiction over [action against non-debtor]. In other words, the Debtors' liability to [non-debtor] under the indemnification is not contingent on a finding of liability. … [The] indemnification claim has fully vested and can be acted upon at any point during the [action]").

[20] The policies provide coverage beginning in the 1950s and continuing until 1986, which overlaps with the usage periods alleged by many of the plaintiffs in the OSC Cases. *See* Decl. Ex. M (Denton Declaration), at ¶ 6.

claimants against the Debtors' estates will be decreased. Shared insurance has been described as constituting a link "decisively favoring" bankruptcy jurisdiction. *In re Fed.-Mogul Global, Inc.*, 282 B.R. at 310 (citing *A.H. Robins*).

*Fourth*, there exists an identity of interest between Imerys and J&J. Just like in *Dow Corning*, non-debtor J&J "was closely involved in using the [] material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries." *Arnold v. Garlock, Inc.*, 278 F.3d 426, 440 (5th Cir. 2001) (citing *Dow Corning*); *accord In re Combustion Eng'g*, 391 F.3d at 230-31 (distinguishing "single product" in *Dow* from claims concerning different products, materials, and markets in *Combustion*, which suggested no identity of interest in the latter). Imerys has been the sole supplier of talc to J&J with respect to the products at issue in the Talc Claims. All of plaintiffs' claims derive from injury allegedly caused by talc supplied by Debtors. Thus, the identity of interest between Imerys and J&J is yet another factor showing that "related to" jurisdiction is anything but tenuous here.

*Finally*, J&J respectfully submits that "assert[ing] a claim against Imerys's estates in the Delaware Bankruptcy Court," Cabibi Order, p.6; Weirick Order, p.6, would neither change the immediate effects of the indemnification provisions and insurance agreements discussed above, nor avert the resulting prejudice to the Debtors' estates and J&J that will occur absent the exercise of "related to" jurisdiction. This is not a case where indemnification is contingent on a finding of liability in the Talc Claims—covered defense costs are mounting *now*. Every dollar spent in that manner affects the Debtors' estates and impacts the limited pool of assets available to satisfy other creditors, which include plaintiffs. It is no answer to "wait and see."[21]

---

[21] For the same reasons, to the extent plaintiffs argue that J&J has not yet filed proofs of claim in the Chapter 11 Case and that impacts jurisdiction, this is simply not the standard. Regardless, J&J intends to file such proofs. The bar date has not

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in J&J's Remand Oppositions submitted to this Court, the OSC cases should not be remanded or, in the alternative, should be stayed pending the forthcoming decision from the Delaware District Court on the Venue Motion.

yet been set in the Chapter 11 Case.

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

1

2  DATED:  May 13, 2019                           TUCKER ELLIS LLP

3

4

5                                                 By: */s/ Nicholas Janizeh*
                                                  Michael C. Zellers
6                                                 Amanda Villalobos
                                                  Nicholas Janizeh
7                                                 Caroline Toole
                                                  Attorneys for Defendants
8                                                 JOHNSON & JOHNSON and
                                                  JOHNSON & JOHNSON
9                                                 CONSUMER INC.

10

11 DATED:  May 13, 2019                           SHOOK HARDY & BACON, LLP

12

13

14                                                By: */s/ Michael F. Healy*
                                                      Michael F. Healy
15                                                    Emily M. Weissenberger
                                                      Alexander Guney
16                                                Attorneys for Defendants
                                                  JOHNSON & JOHNSON and
17                                                JOHNSON & JOHNSON
                                                  CONSUMER INC.
18

19

20

21

22

23

24

25

26

27

28

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED

## **ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)(i)**

I, Nicholas Janizeh, am the ECF User whose identification and password are being used to file this document.  In compliance with Civil Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all signatories have concurred in this filing.


By: */s/ Nicholas Janizeh*
Nicholas Janizeh

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.  My business address is Tucker Ellis LLP, 515 So. Flower Street., 42nd Floor, Los Angeles, California, 90071-2223.

On **May 13, 2019**, I served the following documents:

> 1.   **DEFENDANTS JOHNSON & JOHNSON AND JOHNSON & JOHNSON CONSUMER INC.'S RESPONSE TO ORDER TO SHOW CAUSE WHY REMAINING CENTRAL DISTRICT TALC ACTIONS SHOULD NOT BE REMANDED**
>
> 2.   **DECLARATION OF AMANDA VILLALOBOS IN SUPPORT THEREOF**

on the interested parties in this action by:

**(X)   ELECTRONICALLY VIA ECF:**  the above-entitled document to be served electronically through the United States District Court, Central District ECF website, addressed to all parties appearing on the Court's ECF service list.  A copy of the "Filing Receipt" page will be maintained with the original document in our office.

**(√)   FEDERAL:**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California on May 13, 2019.

/s/ *Nicholas Janizeh*
Nicholas Janizeh

J&J'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE WHY REMAINING
CENTRAL DISTRICT TALC CLAIMS SHOULD NOT BE REMANDED